1

2

3

4

5

6

7                                                          HON. THOMAS S. ZILLY

8

9                    IN THE UNITED STATES DISTRICT COURT

10                      WESTERN DISTRICT OF WASHINGTON

11

| | |
|---|---|
| 12 MARY JANE MEUNIER, | |
| 13 | |
| 14                    Plaintiff, | Case No. 2:13 cv-01046-TSZ |
| 15          vs. | |
| 16 GROUP HEALTH COOPERATIVE and | PLAINTIFF'S BRIEF OPPOSING DEFENDANT GHC'S CROSS-MOTION FOR SUMMARY JUDGMENT |
| 17 AETNA LIFE INSURANCE COMPANY, | |
| 18 | |
| 19                    Defendants. | NOTE FOR MOTION CALENDAR: Friday, April 11, 2014 |
| 20 | |

21

22                              **RELIEF REQUESTED**

23           Plaintiff Mary Jane Meunier opposes the cross-motion of Defendant Group Health

24 Cooperative ("GHC") for summary judgment against Plaintiff.   Genuine issues of

25 material fact exist.  Nor is GHC entitled to judgment in its favor as a matter of law.  The

26
   Court should allow Plaintiff to pursue her breach of fiduciary duty and other claims for
27
   relief against GHC under the Employee Retirement Income Security Act of 1974,
28

1  29 U.S.C. §§ 1001-1461 ("ERISA").  GHC employed Plaintiff's now-deceased husband,
2
3  David A. Meunier, and it deducted and paid life insurance premiums on David to
4  Defendant Aetna Life Insurance Company ("Aetna").  Aetna refuses to pay life insurance
5  benefits to Mary Jane Meunier as David's widow-beneficiary.  As an ERISA fiduciary,
6  GHC is equitably and legally obligated to make Mary Jane whole for David's life
7
8  insurance benefits.  Therefore, summary judgment for GHC is inappropriate.

9                                                **FACTS**

10         The facts are detailed in the several declarations which Plaintiff has filed with the
11
12  Court along with this brief and her previous briefs.  Mary Jane Meunier is the
13  court-appointed personal representative of the estate of David A. Meunier.  *In re Estate of*
14  *Meunier*, No. 2013PR000389 (Wis. Cir. Ct. Waukesha Cnty. filed Aug. 30, 2013).  GHC
15
16  employed David from November 10, 2008 through May 14, 2009.  GHC hired David into
17  "[a] regular active full-time (AF) position as Information Security Officer, for Group
18  Health, located in [GHC's] Compliance Department" as stated in GHC's October 29, 2008
19
20  employment offer letter to David.  David was a participant in the life insurance benefit
21  plan which GHC sponsored for its employees.  GHC was named as plan administrator.
22  Therefore, GHC was an ERISA fiduciary of the plan.  On November 10, 2008, David
23
24  started with GHC in Seattle.  The rest of the Meunier family remained in Wisconsin.
25  They were to relocate to Seattle with David after the school year ended.  Unfortunately,
26  David was diagnosed with terminal brain cancer (Glioblastoma multi-form grade 4) in
27
28  Seattle on November 19, 2008.  David underwent surgery in Wisconsin on November 26,

PLAINTIFF'S BRIEF OPPOSING
DEFENDANT GHC'S CROSS-MOTION
FOR SUMMARY JUDGMENT

13591031_2                              2

2008.   Afterwards, David's physician released David to return to work.   Mary Jane testified, and she and David's daughters state in their declarations, that David continued to work for GHC after his surgery until GHC eventually repossessed his GHC laptop computer in January 2009.   GHC has had possession, custody and control of the computer for the past five years.

David and Mary Jane Meunier reasonably assumed that David had life insurance coverage through GHC.  GHC terminated David's employment in May, 2009.  GHC sent David a COBRA health coverage continuation notice, but GHC did not send him a separate and distinct life insurance conversion notice.   Mary Jane contacted Mr. Jon Moran of GHC by e-mail on July 7, 2009.  She asked him to resend her a COBRA health coverage continuation notice, and she said, "I am also in need of the benefit information in regards to the life insurance David carries with Group Health Cooperative.  I believe he also applied for additional Life Insurance with the company in addition to what was provided."  Mr. Moran responded by email to Mary Jane the same day:  "David does not carry any life insurance with Group Health since he is no longer an employee.  You may be able to convert his life insurance through COBRA."  Thus, Mary Jane was erroneously advised by GHC that David's group life insurance coverage could be converted to individual coverage through COBRA by contacting GHC's COBRA vendor, Benefit Concepts, Inc. ("BCI").  However, BCI does not handle life insurance conversions.  This is because COBRA has nothing to do with life insurance.

1   David died on April 18, 2010.  After grieving David's death, Mary Jane later went

2   through David's GHC employment records.  She found David's GHC earning statements.

3   They showed that GHC took life insurance premium deductions from David's pay.  GHC

4   contributed towards David's basic life insurance coverage with Aetna from January 1,

5   2009 through February 14, 2009, GHC deducted contributions from David's short-term

6   disability benefits for his supplemental life insurance coverage through Aetna from

7   January 1 through January 31, 2009, and GHC forwarded David's life insurance

8   premiums to Aetna.  On April 12, 2011, Mary Jane called Mr. Brian Powell in the Human

9   Resources Department at GHC.  Contrary to what Mr. Moran had told Mary Jane,

10  Mr. Powell confirmed to her that David was indeed eligible for life insurance benefits

11  and that David had such group life insurance coverage from January 1, 2009 through

12  February 22, 2009.   Neither David nor Mary Jane had received a summary plan

13  description ("SPD") for David's life insurance coverage from GHC until Marlo Reyes of

14  GHC forwarded a copy of the SPD to Mary Jane electronically on April 15, 2011.  That

15  was almost a year after David had died.

16  On April 25, 2011, Mr. Powell of GHC told Mary Jane that during David's

17  short-term disability leave with GHC, David's GHC employee status was intact and

18  David was "active" with GHC the entire time.  Mr. Powell referred Mary Jane to Aetna,

19  which referred her back to GHC, which then referred her to BCI, which referred her back

20  to GHC.   All three denied being responsible for David's life insurance conversion.

21  Mary Jane wrote to GHC on June 13, 2011 asking that life insurance benefits be provided

1   to her as David's widow-beneficiary.   GHC then filed a claim with Aetna for life

2   insurance benefits for Mary Jane as David's beneficiary.

3           Aetna denied the claim, erroneously asserting that David was never eligible for

4   the life insurance coverage in the first place because he allegedly had not completed the

5   30-day service requirement.  Therefore, according to Aetna, David also was not eligible

6   for any life insurance conversion coverage.  Aetna ignored the facts that (a) GHC had

7   enrolled David in its life insurance plan as of January 1, 2009 after 30 continuous days of

8   active service, (b) David was still an "active" employee of GHC while he was on short-

9   term disability leave with GHC for more than 30 days, (c) GHC deducted premiums for

10  David's life insurance coverage from David's pay and forwarded them to Aetna while

11  David was employed by GHC for longer than a month.  After David's leave ended in

12  2009, GHC never told David or Mary Jane that his life insurance coverage would not

13  remain in effect unless he returned to full-time work for GHC for one day.

14          These actions and omissions of GHC adversely affected David's life insurance

15  coverage.  As a result, the Meunier family suffered financial hardship.  They sold their

16  $400,000 home in a "short sale" for $310,000.  They also liquidated other assets in order

17  to make ends meet.  The accelerated death benefit feature of the life insurance coverage

18  provided by GHC to David could have prevented the loss of the Meuniers' home.  As his

19  widow, Mary Jane is the beneficiary of David under the life insurance plan.  GHC had

20  collected premiums from David for his life insurance coverage.  Nevertheless, GHC did

21  not inform David about critical terms of his Aetna life insurance coverage after his leave

of absence ended; GHC did not allow David to make a claim to Aetna for accelerated death benefits due to his terminal illness and/or a claim for extended life insurance coverage due to his total disability; and GHC did not distinctly and clearly make conversion from a group to an individual life insurance policy available to David. Instead, GHC provided inaccurate, incomplete and misleading life insurance conversion information to the Meuniers.

GHC did not provide David or Mary Jane with a SPD.  Therefore, David did not know about either the extension of life insurance benefits under the permanent and total disability feature of the life insurance benefit plan or the accelerated death benefits for the terminal illness feature of the plan.  GHC also failed to clearly and conspicuously provide David or Mary Jane with notice of his life insurance conversion rights, either through means of a SPD or by a separate and distinct life insurance conversion notice from GHC to David or Mary Jane.

GHC's July 11, 2011 letter to Mary Jane discussed, among other things, "any right that Mr. Meunier might have had to convert his group [life insurance] coverage to an individual policy [of life insurance]."  This confirmed the fact that David was eligible for and had received group life insurance coverage while he was employed with GHC.  On July 28, 2011, Aetna sent a claim denial to Mary Jane.  On August 16, 2011, Mary Jane wrote to GHC and Aetna in response to GHC's July 11, 2011 letter and Aetna's July 28, 2011 letter.  Neither GHC nor Aetna responded to Mary Jane's August 16, 2011 letter to them.  In it, Mary Jane disputed Aetna's denial of her life insurance benefit claim,

1   provided GHC and Aetna with additional information supporting the claim and asked

2   GHC and Aetna to pay her the basic and supplemental life insurance coverage that was in

3

4   force for David.

5       Aetna denied Mary Jane's claim based on an erroneous factual premise:

6   "Answering paragraph 20 of the Complaint, Defendant Aetna admits that it denied

7

8   Plaintiff's claim for life insurance benefits because David Meunier did not satisfy the

9   30-day continuous service requirement according to the terms of the life insurance plan,

10  and therefore David Meunier was ineligible for life insurance coverage."   (Aetna's

11

12  Answer to Compl.)   In fact, however, David had been employed actively for GHC for

13  more than 30 continuous days after November 10, 2008.  That is why GHC had enrolled

14  him in its life insurance plan as of January 1, 2009.  It is reasonable to presume that GHC

15

16  would not have so enrolled David if he was ineligible for the life insurance coverage.

17                              **DISCUSSION**

18      "The court shall grant summary judgment if the movant shows that there is no

19

20  genuine [issue] as to any material fact and the movant is entitled to judgment as a matter

21  of law."  Fed. R. Civ. P. 56(a).  Here, there are genuine issues of material fact and GHC

22  is not entitled to judgment as a matter of law.  Summary judgment is not warranted if, as

23

24  is the case here, a material issue of fact exists for trial.  *Warren v. City of Carlsbad*, 58

25  F.3d 439, 441 (9th Cir. 1995).   The underlying facts are viewed in the light most

26  favorable to Mary Jane Meunier as the party opposing the motion.  *T.W. Elec. Serv.,*

27

28  *Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).  *Matsushita*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "[S]ummary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A reasonable jury could return a verdict for Mary Jane Meunier.  As the party moving for summary judgment, GHC has the burden to show the absence of a genuine issue concerning any material fact.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159 (1970); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1103 (9th Cir. 2000).  GHC has not met its burden.

In Paragraph 13 of the Amended Complaint, Plaintiff alleged in pertinent part that "David's attending physician released David to return to work remotely following his surgery.  However, GHC did not allow David to do so, and GHC terminated his remote access to its computer network early in January, 2009."  In Paragraph 13 of GHC's Answer, GHC alleged in pertinent part:   "Deny all remaining allegations of this paragraph."  That is, GHC denied that it did not allow David to work remotely following his surgery, and GHC denied that it terminated his remote access to its computer network early in January, 2009.  There is a genuine factual issue as to whether Mr. Meunier completed 30 days of continuous service for GHC after November 10, 2008.   The evidence is contested.  Mary Jane Meunier testified that David continued to work for GHC after his November 26, 2008 surgery for a while.  His daughters have also verified in their declarations that he continued to work after November 26, 2008.  Presumably, GHC considered David to have worked for 30 days of continuous service after his hire

date of November 10, 2008, or else GHC would not have enrolled him in its life insurance plan as of January 1, 2009.  Hence, this is a disputed issue of material fact.

**GHC Breached its ERISA Fiduciary Duty to David and Mary Jane Meunier.**

There were breaches of ERISA fiduciary duty by GHC, and a causal connection exists between those breaches and the harm sustained by the Meuniers.  GHC provided inaccurate, incomplete and misleading life insurance conversion notices to David in a manner that harmed David and Mary Jane.  There is no proof that GHC provided the SPD to David while he was alive.  Mary Jane testified that David never received the SPD. Plaintiff's ERISA fiduciary duty breach claims against GHC are meritorious.

In *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011), the United States Supreme Court determined that reformation was an equitable remedy available under ERISA §502(a)(3), and went on to discuss other types of equitable relief that might provide a similar result, namely, surcharge and estoppel.  The Supreme Court further noted that while the standard of harm for estoppel would require proving detrimental reliance, other equitable remedies, such as surcharge and reformation, might not.  The Supreme Court remanded the case to the district court to determine an appropriate remedy with the strong suggestion that it could fashion one under ERISA.  *Amara* is now the law of the land.

Plaintiff's ERISA section 510 claim against GHC is viable.  As stated in 29 U.S.C. 1140:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an

1
2
3
4
5
6
7
8
9
10

employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.  It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act.  In the case of a multiemployer plan, it shall be unlawful for the plan sponsor or any other person to discriminate against any contributing employer for exercising rights under this chapter or for giving information or testifying in any inquiry or proceeding relating to this chapter before Congress.  The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GHC harmed David and Mary Jane by inaccurately and misleadingly notifying them of his life insurance conversion rights.  This prevented David from exercising his life insurance conversion rights, which effectively deprived him of continued coverage of his life insurance benefits.  A primary goal of ERISA is to increase the likelihood that beneficiaries receive full employee benefits.  *See Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094 (9th Cir. 1999) (citing 29 U.S.C. § 1001b(c)(3), (5)).  In *Spinosa v. Pacific Maritime Ass'n*, 339 F. App'x 754, 757 (9th Cir. 2009), the Ninth Circuit stated:  "[T]he overarching purpose of ERISA . . . is to benefit plan participants and their beneficiaries, not employers."  *See Boggs v. Boggs*, 520 U.S. 833, 845, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997)."  GHC deducted life insurance premiums from David's paychecks and paid them to Aetna; GHC prevented David from returning to work for only one full day in order to remain covered; GHC did not provide David with the life insurance policy and the SPD while he was alive; and GHC sent him inaccurate, incomplete and misleading life

insurance conversion information.  Hence, GHC interfered with David's exercise of his

life insurance conversion rights.

In *Amara*, the Supreme Court observed that a section of ERISA authorizes

various forms of equitable relief:  ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  In

particular, section 502(a)(3) of ERISA authorizes "appropriate equitable relief" for

violations of ERISA.  In *McCravy v. Metropolitan Life Insurance Co.*, 690 F.3d 176,

182-83 (4th Cir. 2012), the Fourth Circuit observed:

> In sum, with *Amara*, the Supreme Court clarified that remedies beyond
> mere premium refunds—including the surcharge and equitable estoppel
> remedies at issue here—are indeed available to ERISA plaintiffs suing
> fiduciaries under section 1132(a)(3).  This makes sense—otherwise, the
> stifled state of the law interpreting section 1132(a)(3) would encourage
> abuse by fiduciaries.  Indeed, fiduciaries would have every incentive to
> wrongfully accept premiums, even if they had no idea as to whether
> coverage existed—or even if they affirmatively knew that it did not.  The
> biggest risk fiduciaries would face would be the return of their ill-gotten
> gains, and even this risk would only materialize in the (likely small) subset
> of circumstances where plan participants actually needed the benefits for
> which they had paid.  Meanwhile, fiduciaries would enjoy essentially risk-
> free windfall profits from employees who paid premiums on non-existent
> benefits but who never filed a claim for those benefits.  With *Amara*, the
> Supreme Court has put these perverse incentives to rest and paved the way
> for McCravy to seek a remedy beyond a mere premium refund.

### GHC Breached Its Fiduciary Duty to Properly Disclose Information Regarding David's Life Insurance Benefits.

Under ERISA § 3(16)(A), the plan administrator is the person specifically

designated by the terms of the plan document.  The plan document specifically designates

GHC as the plan administrator.  As plan administrator, GHC is automatically also a plan

fiduciary under ERISA.  29 C.F.R. § 2509.75-8, Q&A D-3.  An ERISA fiduciary's duty

to inform is made up of two parts:  It includes both "a negative duty not to misinform, [and] also an affirmative duty to inform when the [fiduciary] knows that silence might be harmful."  *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1300 (3d Cir. 1993)*; see also Krohn v. Huron Mem'l Hosp.,* 173 F.3d 542 (6th Cir. 1999).  GHC did not timely provide an SPD to David; GHC did not tell David that he did not qualify for life insurance (although GHC did make it clear to him that he did not qualify for long-term disability insurance); GHC did not provide a clear statement that David's life insurance had ended; and GHC did not provide David or Mary Jane with a distinct and conspicuous notice of his life insurance conversion rights.

### GHC Breached Its Fiduciary Duty by Failing to Timely Provide a Life Insurance Summary Plan Description to David.

ERISA plan administrators like GHC are responsible to distribute summary plan descriptions ("SPDs").  ERISA § 101(a).  In its brief, GHC states that:

> it was GHC's standard practice to send the packet of employee benefits information to the residential address provided by the employee via first class US Mail within one or two weeks, including summary descriptions for each of the benefit plans selected by the employee. .Pursuant to this practice, GHC would have mailed the benefit packet containing all of the relevant SPDs to the address provided by Mr. Meunier within one to two weeks of his selection of benefits on November 10, 2008.

GHC has not produced a cover letter, a file notation or any kind of specific, first-hand knowledge testimony that this SPD was, in fact, mailed to David Meunier's home address.  Citing GHC's general mailing procedures for SPDs proves nothing.  As the court observed in *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 419-20 (5th Cir. 2007):

The summary judgment record provides no physical evidence that the December 2002 notices were mailed, such as business records, a signed receipt from certified mail, or a post–marked envelope.

In *Custer,* there was at least some specific evidence that the disclosures were actually stuffed by the employee benefits department and delivered to the mail room. Here, GHC apparently cannot even pin down the specific date that this SPD was supposedly mailed to the Meuniers.  GHC also comments: "In addition, the SPD for Mr. Meunier's life insurance plan was available through the very same GHC intranet site that he used to enroll for benefits."  This is illogical reasoning.  By GHC's assertion, David's remote access to GHC's intranet was allegedly terminated by GHC.

David never received an SPD in the mail from GHC.  In fact, Plaintiff first saw a life insurance SPD when she received an electronic copy from Brian Powell of GHC in April, 2011.  That was about a year after David died.

> **GHC Breached Its Fiduciary Duty by Failing to Clearly Communicate to David That He Might Not Meet the Requirements to Become Eligible for Life Insurance Although It Specifically Told David That He Would Not Qualify for Long-Term Disability Insurance.**

GHC communicated to David that he would not be eligible for long-term disability benefits.  The Meuniers understood this, as evidenced by the Plaintiff's email correspondence with Patrick Anunsen of GHC on March 12, 2009.  ("With David not being qualified for Long term disability through Group Health, he has NO income at this time.")  Although David presumably completed an enrollment form for LTD coverage,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GHC determined he was ineligible and communicated to the Meuniers that there were no LTD benefits.  No application for benefits was ever filed with the LTD carrier.

Contrast this to how GHC handled Plaintiff's claim for life insurance benefits. GHC's plan administration functions with respect to enrollment and premium deduction for the life insurance were not purely ministerial functions.  They were an exercise of discretionary authority.  However, by its status as plan administrator, GHC is a plan fiduciary under ERISA, and as such, GHC is subject to the fiduciary rules.  29 C.F.R § 2509.75-8, Q&A D-3.  *See also Bouboulis v. Transp. Workers Union of America*, 442 F.3d 55 (2d Cir. 2006).  As plan administrator, GHC has a fiduciary duty under ERISA to administer the plan in accordance with the plan documents.  As the employer, GHC is the only entity with the information necessary to determine whether an employee met the service and active work requirements in order to be eligible for the life insurance plan.  The act of payroll deduction of employee contributions, which are plan assets by definition, 29 C.F.R. § 2510.3-102, is fiduciary in nature.

If, as GHC asserts, GHC is not responsible to determine plan eligibility and contributions, it leads to the absurd result that a determination of plan eligibility does not occur until an employee dies and the beneficiary files a claim with the life insurance company (Aetna, in this case).  The insurer then reviews records that are in the employer's possession, custody and control at the time of enrollment and payroll deduction, and decides whether the employee was eligible, potentially denying the claim. At this point, it is too late for the insured to take other measures to ensure that life

insurance coverage was in place at the time of death.  It also means that, if GHC automatically deducts premiums from any employee who completes a life insurance enrollment form and forwarding premiums to the insurance carrier, then the insurance carrier is being unjustly enriched by potentially collecting these premiums for years without ever paying a claim.

### GHC Breached Its Fiduciary Duty to David by Failing to Clearly Communicate the Termination of David's Life Insurance Coverage.

GHC enrolled David in its life insurance plan effective January 1, 2009.  GHC collected and forwarded premiums for David's life insurance coverage to Aetna.  Yet GHC now asserts that David did not meet the requirements to become eligible for life insurance coverage, and was therefore never a plan participant.  Nevertheless, GHC mailed a notice to David on February 6, 2009 stating:

> Your company provided benefits (***medical, dental, accidental death & dismemberment,*** etc.) will expire at the end of the month in which your short-term disability payments cease.

(Emphasis added.)

Absent from this list is life insurance.  The Supreme Court has found that employers generally are fiduciaries under ERISA when they describe or communicate employee benefit programs to their employees.  *Varity Corp. v. Howe*, 516 U.S. 489 (1996).  As GHC took it upon itself to notify David of the termination of his various benefits, GHC should have specifically enumerated all of the affected benefits.  GHC did not do so with respect to life insurance.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GHC Breached Its ERISA Fiduciary Duty by Failing to Provide a Clear and Conspicuous Notice of David's Conversion Rights.**

Absent a SPD, the only way David could have received the necessary information to effectively exercise his life insurance conversion rights would be through a life insurance conversion notice.  However, GHC failed to provide David with clear and conspicuous notice of his right to convert his group life insurance coverage to individual coverage.  The ERISA standard for disclosures to participants in general is that the communication must be clear, and written in a way calculated to be understood by the average plan participant.  For example:

> The format of the summary plan description must not have the effect to misleading, misinforming or failing to inform participants and beneficiaries. Any description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant.

29 C.F.R. § 2520.102-2(b).

The Ninth Circuit has declined to enforce inadequately worded disclosures even in the absence of bad faith by the employer.  *Saltarelli v. Bob Baker Grp. Med. Trust*, 35 F.3d 382 (9th Cir. 1994).  In *Saltarelli*, the plan's preexisting condition exclusion was buried in the definitions section of the SPD.  The Ninth Circuit observed:

> Among the Baker Group plan provisions is an exclusion for "pre-existing conditions." However, an insured reading the table of contents of the plan summary would find no heading for this critically important item. The only arguably relevant heading apparent from the table of contents, "Eligibility Rules: Employee Eligibility and Effective Date," contains no reference to it at all.

1    *Id.* at 385.   The Ninth Circuit held that because the attempted exclusion was not clear,

2

3    plain, and conspicuous enough, it was unenforceable and the plan was liable for

4    coverage.

5        GHC did not provide a separate and distinct conversion notice for life insurance

6

7    to David.  Instead, GHC buried the life insurance conversion notice in the COBRA health

8    coverage continuation notice issued by Benefits Concept, Inc. on behalf of GHC.

9    COBRA is only available for health insurance coverage, not life insurance.   The first

10   page of the COBRA notice did not refer to life insurance.  The election form at the end of

11

12   the COBRA health coverage continuation notice only contained options for continuing

13   medical or dental benefits, not life insurance.

14       At the time the COBRA health coverage continuation notice was issued in March,

15

16   2009, the Meuniers were focused on the medical coverage.   David could not move

17   forward in his cancer treatment plan until his medical coverage was confirmed.  Mary

18

19   Jane contacted Patrick Anunsen of GHC, because even though the COBRA notice had

20   allegedly been mailed to the Meuniers, they had not received it.  Dawn Chiasson of GHC

21   emailed an electronic copy of the COBRA notice.  Ms. Chiasson's cover email referred

22

23   only to the COBRA health coverage continuation rights, not the life insurance

24   conversion.   The Meuniers knew that COBRA health coverage continuation was a

25   necessity for David.  With nothing to catch their eye about life insurance conversion, they

26

27   would not have read through every page of the COBRA health coverage continuation

28   notice in detail.   All the Meuniers really needed to know to continue David's health

coverage was contained on the election form at the end of the COBRA notice.  As reasonable laypersons, the Meuniers should not be expected to minutely examine a notice about COBRA health coverage continuation rights in order to find buried information on life insurance conversion.

### GHC Breached Its ERISA Fiduciary Duty When It Failed to Properly Respond to Plaintiff's Inquiries About David's Life Insurance Coverage in July, 2009.

Even assuming GHC had properly provided an SPD and a clear life insurance conversion notice to David, the Plaintiff's email to GHC's Senior HR Consultant, Jon Moran, dated July 7, 2009, shows that the Meuniers did not have the proper information about David's life insurance benefits and were unaware that David's life insurance coverage had been terminated.  Mary Jane said:

> I am also in need of the benefit information in regards to the life insurance David carriers with Group Health Cooperative.  I believe he also applied for additional life insurance with the company in addition to what was provided.

Mr. Moran of GHC responded by email to Mary Jane on July 9, 2009, as follows:

> David does not carry any life insurance with Group Health since he is no longer an employee.

> You may be able to convert his life insurance coverage through COBRA.

As a "Senior HR Consultant" and as the "HR Consultant for the Legal Division" of GHC (*see* Patrick Anunsen's email to Mary Jane dated April 6, 2009), this was an inadequate response.  GHC did not verify whether or when David was covered by life insurance; GHC did not check to make sure that an SPD had been sent previously nor

forward a new one; GHC did not check to see when its own records showed that David's life coverage had terminated; GHC did not forward a copy of the February 6, 2009 coverage termination letter; and GHC did not forward a copy of the conversion notice. Instead, GHC told Mary Jane that David was no longer covered for life insurance and that the Meuniers could convert his life insurance coverage through COBRA.  This was a misstatement of the law by GHC.  When Mary Jane contacted GHC's COBRA vendor, Benefits Concepts, Inc., she was told that BCI had nothing to do with the life insurance coverage.  The Meuniers made good faith attempts to convert David's life insurance coverage from group to individual, but they were frustrated by GHC and its agent, BCI.

> **GHC's Breaches of ERISA Fiduciary Duty in its Failures to Disclose As Listed Above Caused David to Fail to Take Action That Would Have Protected His Benefits.**

As noted above, David met the requirement of 30 days of continuous service for life insurance coverage eligibility.  If he was not "actively at work" on January 1, 2009, when his life insurance coverage took effect, then David had only to work one day after January 1, 2009 in order to qualify for coverage.  However, David had no idea of this requirement.  GHC did not give him an SPD; GHC did not tell him that his January 1, 2009 life insurance plan enrollment was ineffective; and GHC deducted payroll contributions for life insurance coverage from his check after January 1, 2009.  But assuming that GHC is correct that David did not meet the "actively at work" requirement, it was GHC's conduct that prevented this from happening.  Therefore, GHC is equitably estopped from denying that David was a participant in its life insurance plan.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GHC did not explicitly tell David that his life insurance coverage terminated at the end of his STD benefit period and GHC did not clearly and accurately notify him of his life insurance conversion rights.  Moreover, when Mary Jane told GHC in her email to Jon Moran that the Meuniers did not have the necessary information about its life insurance employee benefits or David's life insurance conversion rights, GHC failed to provide them with a complete, correct and unambiguous response.  As a consequence, David was uninformed of his life insurance benefits.  GHC's actions and inactions prevented David from taking the steps necessary to preserve his life insurance benefits by converting his life insurance coverage from a group policy to an individual policy.

In its manual entitled *ERISA Compliance for Health & Welfare Plans*, Employee Benefit Institute of America (now part of Thomson Reuters) (EBIA) observes:

> **Beware of Mishandling Insurance Applications and Providing Misinformation About the Plan.** Particularly given the potential expansion of remedies under *Amara*, plan administrators must be diligent and should check that proper procedures are in place for tracking insurance applications and ensuring their timely submission to insurers. In addition, care must be taken when providing information to eligible employees about plan benefits or enrollment in insurance programs, especially new programs that may have special enrollment or eligibility requirements. Where, as is usually the case, the plan sponsor is the responsible ERISA fiduciary (by reason of being the named fiduciary or the plan administrator), an award of relief against the fiduciary can mean that the plan sponsor will have to pay the benefits directly as if the plan were self-insured.

Deirdre C. Thomas et al., *ERISA Compliance for Health & Welfare Plans* § XXVIII.1 at 797 (4th Qtr. ed. 2013).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GHC established its life insurance plan; the Aetna insurance policy is the funding source. As ERISA plan administrator, GHC is ultimately responsible to properly administer the plan. If these several mistakes as detailed above belong solely to GHC and not to Aetna, then GHC is responsible for the resulting ERISA liability to the Meuniers.

GHC and Aetna either waived, or should be equitably estopped to assert, the "active full-time work rule." GHC and Aetna waived the 30-day continuous service requirement by respectively deducting and accepting the life insurance premiums on David. GHC and Aetna are equitably estopped to assert such a coverage defense after-the-fact because GHC had deducted and Aetna had accepted David's life insurance premiums. GHC and Aetna did not advise David that he only needed to return to work for one full day for his life insurance benefits to remain in effect. GHC's deduction and Aetna's acceptance of David's life insurance premiums and Aetna's subsequent denial of life insurance benefits to Mary Jane are at the equitable heart of this case. By deducting and accepting life insurance premiums on David, GHC and Aetna admitted coverage. This waived the 30-day active full-time work requirement. The Court can and should fashion an appropriate equitable remedy here – what premiums would David have had to have paid after February 14, 2009 in order to maintain his life insurance coverage in force? Alternatively, the Court can and should find that there was a waiver of life insurance premiums because of David's disability.

Mary Jane's August 16, 2011 letter to GHC and Aetna challenged the July 28, 2011 denial of life insurance benefits to her.  (AET000478-000481).  Mary Jane disputed the stated ground for denying her the life insurance benefits.  She also provided GHC and Aetna with additional information supporting her claim.  Under ERISA, GHC could have either responded to Mary Jane or requested an extension for responding to her.  GHC did neither.

Mary Jane then filed this suit on June 18, 2013.  ERISA claims for benefits are under ERISA § 502(a)(1).  There is no explicit statute-of-limitations under ERISA for claims for benefits.  Hence, the most analogous state statute is used.  In the State of Washington, that is six years.   GHC hired David on November 10, 2008, less than six years ago.  Mary Jane's ERISA benefit denial claims against GHC are timely.

ERISA claims for fiduciary duty breaches are under ERISA § 502(a)(2) and (3).  Unlike benefit denial claims, there is a specific statute of limitations for ERISA breach of fiduciary duty claims:

**ERISA § 413 [29 U.S.C. § 1113] Limitation of actions.**

No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation

1
2
3

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

4
5
6
7
8
9
10
11

If the three-year statute applies, the three years began to run in 2011 when Mary Jane found David's GHC earning statements.  The statute refers to actual, not constructive, knowledge.  As noted above, Mary Jane filed suit on June 18, 2013, within three years of that time.  Alternatively, the three years run from April 12, 2011, when Brian Powell of GHC told Mary Jane that David was in fact eligible for life insurance benefits.  Plaintiff's ERISA fiduciary duty breach claims against GHC are timely.

12

## CONCLUSION

13
14
15
16
17
18
19
20
21
22
23

As in *Amara* and *McCravy*, this ERISA case concerns a suit by a plan beneficiary—Mary Jane Meunier—against plan fiduciaries (whom ERISA typically treats as trustees)—GHC and Aetna—about insurance premiums paid under an employee benefits plan (which ERISA typically treats as a trust).  It was inequitable, and a breach of its ERISA fiduciary duty, for GHC to deduct life insurance premiums on David Meunier only to have Aetna then deny life insurance benefits to his widow-beneficiary Mary Jane.  GHC also impaired David's ability to convert his group life insurance coverage to individual coverage.

24
25
26
27
28

As a result of GHC's breaches of its ERISA fiduciary duty to David and Mary Jane, David did not convert his life insurance coverage from group to individual.  Section 502(a)(3) of ERISA authorizes the district court to remedy such an inequity.  Therefore, Mary Jane Meunier respectfully asks the Court under ERISA § 502(a)(3) to

1   allow her as David's beneficiary and the executor of his estate to pursue appropriate

2   equitable remedies such as surcharge, estoppel and waiver against GHC.  As a matter of

3

4   law, GHC's cross-motion for summary judgment against Plaintiff should be denied.

5           Respectfully submitted this 7th day of April, 2014.

6
      /s/Jeffrey P. Clark                              /s/ Joseph L. Koplin
7     Jeffrey P. Clark                                 Joseph L. Koplin, 7683
      WI State Bar ID No. 1009316                      MOSCHETTO KOPLIN, INC., P.S.
8     REINHART BOERNER VAN                             1800 112th Avenue NE, Suite 300#
      DEUREN s.c.                                      Bellevue, WA 98004-2954
9     1000 North Water Street, Suite 1700             (425) 641-6000
      Milwaukee, WI 53202                              (425) 641-1745 (facsimile)
10
      (414) 298-8131                                   E-mail:  joe@moschettokoplin.com
11    (414) 298-8097 (facsimile)                       Attorney for Plaintiff Mary Jane Meunier
      E-mail:  jclark@reinhartlaw.com
12    Attorney for Plaintiff Mary Jane
13    Meunier

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28